IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLUE SPHERE, INC., d/b/a LUCKY 13 and ROBERT A. KLOETZY,<br><br>    Plaintiffs,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,<br><br>    Defendants. | Case No. 23-cv-5493<br><br>Judge |

## COMPLAINT

Plaintiffs, BLUE SPHERE, INC., d/b/a LUCKY 13 and ROBERT A. KLOETZY ("Plaintiffs"), by undersigned counsel, hereby complain of the Partnerships and Unincorporated Associations identified in Schedule A attached hereto (collectively, "Defendants"), and allege as follows:

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq.; 28 U.S.C. § 1338(a) - (b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiffs' LUCKY 13 Trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiffs' federally registered trademark to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

## INTRODUCTION

3. This action has been filed by Plaintiffs to combat e-commerce store operators who trade upon Plaintiffs' reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiffs' federally registered trademarks (the "Counterfeit Products").

4. Defendants created numerous Internet Stores and designed them to appear to be selling genuine Plaintiffs' products, while selling inferior imitations of Plaintiffs' products. Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or

series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of Plaintiffs' registered trademarks as well as to protect unknowing consumers from purchasing unauthorized products over the Internet. Plaintiffs has been and continues to be irreparably damaged through consumer confusion, dilution and tarnishment of its valuable trademarks as a result of Defendants' actions and seek injunctive and monetary relief.

5. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

**THE PLAINTIFFS**

6. Plaintiffs own and manage the licensing, sale, and marketing of LUCKY 13 products. Plaintiff BLUE SPHERE, INC. d/b/a LUCKY 13 is a California corporation with its principal place of business at 215 Baker Street E, Costa Mesa, California, 92626. Plaintiff ROBERT A. KLOETZY is the Chief Executive Officer of BLUE SPHERE, INC. d/b/a LUCKY 13. He maintains a place of business at 1609 N. King Street, # 6813, Santa Ana, California 92706.

7. Plaintiffs are in the business of developing, marketing, selling and distributing LUCKY 13 products. LUCKY 13 has become a clothing staple in Southern California, especially in the punk rock, psychobilly, and rockabilly music scenes. LUCKY 13 isn't just a brand that pays homage to the vintage trend, fueling a lifestyle. BLUE SPHERE, INC. is the official source of LUCKY 13 products.

8. Plaintiffs are the owners of U.S. Trademark Registration Nos. 2,970,316; 2,974,104; 3,022,964; 3,049,988; 3,207,294 and 3,250,642 for the "LUCKY 13" word mark in classes 12, 14, 16, 18, 21, 25, 26 and 35 and U.S. Trademark Registration No. 4,380,254 for the word mark "GREASE GAS & GLORY" in class 25 (collectively, the "LUCKY 13 Trademarks").

9. The above registrations for the LUCKY 13 marks are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the above-referenced marks are attached hereto as Exhibit 1.

10. The LUCKY 13 Trademarks are distinctive and identify merchandise as goods from BLUE SPHERE, INC., d/b/a LUCKY 13 and ROBERT A. KLOETZY or its duly authorized licensees.

11. The LUCKY 13 Trademarks have been continuously used and never abandoned.

12. Plaintiffs' LUCKY 13 Trademarks are exclusive to Plaintiffs and are displayed extensively on Plaintiffs' Products and in Plaintiffs' marketing and promotional materials. Plaintiffs' LUCKY 13 Trademarks have been the subject of substantial and continuous marketing and promotion by Plaintiffs at great expense. In fact, Plaintiffs have expended significant resources annually in advertising, promoting and marketing featuring Plaintiffs' LUCKY 13 Trademarks. Plaintiffs' promotional efforts include — by way of example, but not limitation — substantial print media, a website, social media sites and point of sale materials. Because of these and other factors, Plaintiffs' LUCKY 13 Trademarks have become famous worldwide.

13. Plaintiffs' LUCKY 13 Trademarks are distinctive when applied to Plaintiffs' Products, signifying to the purchaser that the products come from Plaintiffs and are manufactured to Plaintiffs' quality standards. Whether Plaintiffs manufacture the products

themselves or license others to do so, Plaintiffs have ensured that products bearing their trademarks are manufactured to the highest quality standards. Plaintiffs' LUCKY 13 Trademarks have achieved fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with Plaintiffs' LUCKY 13 Trademarks is incalculable and of inestimable value to Plaintiffs.

14. Plaintiffs' LUCKY 13 Trademarks qualify as famous marks, as used in 15 U.S.C. §1125 (c)(1), and have been continuously used and never abandoned.

15. Plaintiffs have expended substantial time, money, and other resources in developing, advertising, and otherwise promoting its Trademarks. As a result, products bearing the LUCKY 13 Trademarks are widely recognized and exclusively associated by consumers, the public and the trade as products sourced from Plaintiffs.

## THE DEFENDANTS

16. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including Illinois and within this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendants' Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products to consumers within the United States, including Illinois and this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

17. The success of Plaintiffs' brand has resulted in its counterfeiting. Plaintiffs have identified numerous online marketplace accounts and marketplace listings on platforms such as

iOffer, Artistshot, Amazon, Alipay, Teepublic and Printerval, including the Defendants' Internet Stores, which were offering for sale, selling and importing counterfeit products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendants' Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in 2013 was over $1.74 billion, up from $1.26 billion in 2012. Internet websites like the Defendants' Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue.

18. Upon information and belief, Defendants facilitate sales by designing the Defendants' Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine products. Many of the Defendants' Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and Artistshot, Amazon, Alipay, Teepublic and Printerval. Defendants' Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

19. Plaintiffs have not licensed nor authorized Defendants to use their Trademarks and none of the Defendants are authorized retailers of their genuine products.

20. Upon information and belief, Defendants deceive unknowing consumers by using the Plaintiffs' LUCKY 13 Trademarks without authorization within the content, text, and/or meta tags of its websites to attract various search engines looking for websites relevant to consumer searches for Plaintiffs' products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendants' Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for Plaintiffs' genuine products. Further, Defendants utilize similar illegitimate SEO tactics to propel new online marketplace accounts to the top of search results after others are shut down. As such, Plaintiffs seek to disable Defendant Internet Stores by which the Defendants could continue to sell their counterfeit products.

21. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Internet Stores. For example, many of Defendants' names and physical addresses used to register the online marketplace accounts are incomplete, contain randomly typed letters, or fail to include cities or states. Other online marketplace accounts use privacy services that conceal the owners' identity and contact information. Upon information and belief, some of the tactics used by the Defendants to conceal their identities and the scope and interworking of their counterfeit operations to avoid being shut down include regularly creating new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other fictitious names and addresses.

22. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Internet Stores. For example, some of the Defendants' websites have identical layouts, even though different aliases were used to register their respective online

marketplace accounts. In addition, the counterfeit products for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit products were manufactured by a common source and that Defendants are interrelated. The Defendants' Internet Stores also include other notable common features, including use of the same online marketplace account registration patterns, unique shopping cart platforms, similar payment and check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

23. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, when counterfeiters like Defendants receive notice of a lawsuit they will often register new online marketplace accounts under a new aliases and move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters will also ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

24. Further, counterfeiters such as Defendants typically operate multiple credit card merchant and Artistshot, Amazon, Alipay, Teepublic and Printerval accounts behind layers of payment gateways so that they can continue to operate in spite of Plaintiffs' enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move

funds from their Artistshot, Amazon, Alipay, Teepublic and Printerval accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of Artistshot, Amazon, Alipay, Teepublic and Printerval transaction logs from prior similar cases indicate that offshore counterfeiters regularly move funds from U.S.-based Artistshot, Amazon, Alipay, Teepublic and Printerval accounts to China-based bank accounts, for example, outside the jurisdiction of this Court.

25. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation and potential new lawsuits.

26. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use Plaintiffs' LUCKY 13 Trademarks in connection with the advertisement, distribution, offering for sale, and sale of counterfeit products into the United States and Illinois over the Internet. Each Defendants' Internet Stores offer shipping to the United States, including Illinois and, on information and belief, each Defendant has offered to sell counterfeit products into the United States, including Illinois.

27. Defendants' use of Plaintiffs' LUCKY 13 Trademarks in connection with the advertising, distribution, offering for sale and sale of counterfeit products, including the sale of counterfeit products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

28. Plaintiffs repeat and incorporate by reference herein the allegations contained

9

in paragraphs 1-27 of this Complaint.

29. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of Plaintiffs' Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiffs' LUCKY 13 Trademarks are highly distinctive. Consumers have come to expect the highest quality from Plaintiffs' products provided under its Trademarks.

30. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing and advertising products in connection with Plaintiffs' LUCKY 13 Trademarks without Plaintiffs' permission.

31. Plaintiffs is the owner of the LUCKY 13 Trademarks (Exhibit 1). The United States Registrations for Plaintiffs' LUCKY 13 Trademarks are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in its Trademarks and are willfully infringing and intentionally using Plaintiffs' LUCKY 13 Trademarks on counterfeit products. Defendants' willful, intentional and unauthorized use of Plaintiffs' LUCKY 13 Trademarks is likely to cause and is causing confusion, mistake and deception as to the origin and quality of the counterfeit products among the general public.

32. Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

33. The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell and sale of counterfeit Plaintiffs' products.

34. Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known Trademarks.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

35. Plaintiffs repeat and incorporate by reference herein the allegations contained in paragraphs 1-34 of this Complaint.

36. Defendants' promotion, marketing, offering for sale and sale of counterfeit products have created and are creating a likelihood of confusion, mistake and deception among the general public as to the affiliation, connection or association with Plaintiffs or the origin, sponsorship or approval of Defendants' counterfeit products by Plaintiffs.

37. By using Plaintiffs' LUCKY 13 Trademarks in connection with the sale of counterfeit products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit products.

38. Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit products to the general public under 15 U.S.C. §§ 1114, 1125.

39. Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510/1, et seq.)

40. Plaintiffs repeat and incorporate by reference herein the allegations contained in paragraphs 1-39 of this Complaint.

41. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit products as those of Plaintiffs, causing likelihood of confusion and/or misunderstanding as to the source of its goods, causing likelihood of confusion and/or misunderstanding as to an affiliation, connection or association with genuine products, representing that their products have Plaintiffs' approval when they do not, and engaging in other conduct which creates likelihood of confusion or misunderstanding among the public.

42. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 et seq.

43. Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

   a. using Plaintiffs' LUCKY 13 Trademarks or any confusingly similar trademark or name in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiffs to be sold in connection with Plaintiffs' LUCKY 13 Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiffs that is not Plaintiffs' or is not

produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under their Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d. further infringing Plaintiffs' LUCKY 13 Trademarks and damaging Plaintiffs' reputation and goodwill;

e. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered including Plaintiffs' LUCKY 13 Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

f. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts or any other online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit products; and

g. operating and/or hosting websites registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing Plaintiffs' LUCKY 13 Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine product or is not authorized by Plaintiffs to be sold in connection with their Trademarks;

2) Entry of an Order that, the same online marketplace platforms shall disable the Defendant Internet Stores and make them inactive and untransferable;

3) Entry of an Order that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as iOffer, Artistshot, Amazon, Alipay, Teepublic and Printerval, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Internet Stores, and online marketplace platforms, shall:

   a. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit products using Plaintiffs' LUCKY 13 Trademarks including any accounts associated with the Defendants listed in Schedule A;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit products using Plaintiffs' LUCKY 13 Trademarks; and

   c. take all steps necessary to prevent links to the Defendant Internet Stores identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stroes from any search index;

5) That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiffs' LUCKY 13 Trademarks are increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6) In the alternative, Plaintiffs are awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of their trademark;

7) That Plaintiffs are awarded their reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

Dated: August 15, 2023          Respectfully submitted,

                                               By:    */s/ Michael A. Hierl*
                                                         Michael A. Hierl (Bar No. 3128021)
                                                         William B. Kalbac (Bar No. 6301771)
                                                         Robert P. McMurray (Bar No. 6324332)
                                                         Hughes Socol Piers Resnick & Dym, Ltd.
                                                         Three First National Plaza
                                                         70 W. Madison Street, Suite 4000
                                                         Chicago, Illinois 60602
                                                         (312) 580-0100 Telephone
                                                         mhierl@hsplegal.com
                                                         Attorneys for Plaintiffs
                                                         BLUE SPHERE, INC., D/B/A LUCKY 13 and
                                                         ROBERT A. KLOETZY

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Complaint was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on August 15, 2023.

                                                                   s/Michael A. Hierl